## MAJOR WESLEY *et al.* v. STATE.

No. A-1949.    Opinion Filed February 23, 1915.

(146 Pac. 450.)

1. **HOMICIDE—Murder—Sufficiency of Evidence.** In a prosecution for murder, evidence examined, and **held** to sustain a conviction without capital punishment.

2. **SAME—Evidence—Res Gestae.** Testimony as to a statement made by the deceased, shortly before and near the scene of the homicide, in the presence of the defendant, and following an altercation between the defendant and the deceased, both Creek Indians, which purported to be a statement in English of what the defendant in the Indian language had said to the deceased, which statement in substance was that the defendant told him that he was going to kill him to-night and put his body on the railroad track, **held,** competent and admissible as tending to illustrate the state of the defendant's feelings towards the deceased at the

time of the homicide, and competent and admissible as a declaration of the deceased before the homicide sufficiently connected with the act as to form a part of the res gestae.

(Syllabus by the Court.)

*Appeal from District Court, McIntosh County;*
*Presley B. Cole, Judge.*

Major Wesley, Jonas Lewis, and Samson Lewis were jointly convicted of murder, and they appeal. Affirmed.

The plaintiffs in error, Major Wesley, Jonas Lewis, and Samson Lewis, were jointly informed against for the murder of John Asbury, alleged to have been committed on or about the 3d day of November, 1911. It is alleged that they then and there, in the presence of each other, purposely, willfully, feloniously and with malice aforethought, and without authority of law, and with a premeditated design to effect the death of one John Asbury, did with force and arms an assault make on the said John Asbury with a certain sharp and dangerous weapon, to wit, a knife, and also with certain dangerous and deadly weapons, to wit sticks or clubs of wood, each being about the length of 30 inches, and of the diameter of two inches, and did then and there feloniously, willfully, knowingly, and unlawfully, and with malice aforethought, and with a premeditated design then and there to effect the death of the said John Asbury, strike and beat and stab the said John Asbury with said knife and with sticks and clubs of wood, thereby inflicting several mortal wounds in and upon the head and body of him, the said John Asbury, of which said mortal wounds, strokes, and bruises he did then and there immediately die. They were tried jointly, resulting in their being found guilty of murder as charged and their punishment fixed at imprisonment in the penitentiary for life at hard labor. From the judgment rendered upon the verdict, the plaintiffs in error have appealed to this court.

It appears that the plaintiffs in error are Creek Indians, and that the deceased was a full-blood Creek Indian. Near midnight of the date alleged, the body of the deceased was found lying between the rails of the Missouri, Kansas & Texas

Railroad, nearly one-half a mile south of the Eufaula depot. The head, severed from the body, was lying outside the rails. Both feet had been cut entirely off, and were lying on the other side of the rails. On the body were several wounds, manifestly made by a knife. About 100 yards north from where the body was found, there was a large pool of blood, near the railway. Near this blood were found two split sticks of wood, about two feet long, with blood and hair on them.

The plaintiffs in error, with one Joe Dick, and the deceased were seen by several persons in the vicinity between sundown and dark on that day. Joe Dick, another Creek Indian, was arrested charged with the crime. He turned what is termed "state's evidence." As a witness for the state, he testified: That he was with Johnson Lewis and John Asbury's father and John Asbury near the railroad, not far from the power house in Eufaula. That Johnson Lewis and Asbury's father went home. That shortly after he and John Asbury met Samson Lewis and Jonas Lewis, and soon afterwards they met Major Wesley. That Samson Lewis struck John Asbury in the breast with a knife, and Major Wesley knocked Asbury down with a stick of wood. Jonas Lewis also hit Asbury with a stick of wood, and in that way they killed him. Major Wesley then proposed to take the body and throw it on the track to hide the crime, and said, "I have been wanting to kill this fellow for a long time, and I have done it;" that, "People have accused me of killing people and laying them on the track, but they never have proved it on me yet." That they pulled off their coats and carried the body about 70 yards down the track and placed it between the rails and put a bottle of whisky inside the coat in order to make it appear that Asbury was drunk, and had lain down on the track, and that a train ran over him.

Samson Lewis, sworn as a witness in his own behalf, testified: That on the day of the homicide he was picking cotton for Major Wesley, and about 10 o'clock he went to town with Major Wesley and Henry Deer. That about 4 o'clock he was with Jonas Lewis, and they saw Joe Dick and John Asbury going out to some place near the railroad where they could drink

some whisky unobserved. That, wanting to drink some of the whisky, they followed and caught up with them, and Joe Dick told them to go back. About that time Johnson Lewis and Jimsey Asbury joined the other two, and they went on, and he and Jonas Lewis came back and met Major Wesley, Albert Deer, and Henry McIntosh. That McIntosh called on them for money to buy whisky, and they refused to contribute, and McIntosh raised a row, and they had a little scuffle with him. That he then came uptown, and after dark he went over to the other side of the railroad to an eating place and was eating when Joe Dick came in and called him out, and said to him, "Can you keep a secret?" and he replied that he did not know about that, and Joe Dick said: "I have taken away the life of John Asbury, and it is that I wish to tell you. If you will keep it a secret, and not tell, I will buy some whisky for you, and you can go and I will go my way." That they went to a pool hall, and Dick bought the whisky and gave it to him, and they went out. Dick then said: "That person that I have killed I want to lay on the track, and I want you to help me do the work; if you don't go with me and put this man on the track, you mean by that you will be wanting to tell on me." That he became afraid of Dick and went with him. That they went to where Dick said the man would be found, and John Asbury was lying there. That Asbury got up, and Dick said: "I thought I had killed him, but it seems he is not dead. I will go and get a stick and finish him." And he went and got a stick, and said, "Let's go up here to the railroad," and John Asbury said, "I don't care to go on the railroad," and he started south parallel with the railroad, and Dick said, "Let's follow him," and we caught up with him, and Joe Dick struck him down with a piece of stove wood. He struck him five times. He then threw the club away. In about five minutes Asbury seemed to revive, to come to life again, and Dick told witness to get him another club, and he told him he could not find one. Dick then went and got another stick of stove wood and struck Asbury with it some five or six times. That he and Dick carried the body and put it on the railroad. A freight train came south and passed over it.

They then went to see what damage had been done to the body, and Dick said it had not been mangled much, and he laid the body on the track in a different direction, and they went away. That they went to Anna Scott's house, arriving there about midnight, and they would not let them in. That Joe Dick left him there, and witness, overcome with drink, lay down near the house and went to sleep. That after they were arrested and in jail Joe Dick said to him that "It seems to be pretty generally believed that Major Wesley did this killing, and, if you will aid me in attributing this crime to him, we can both get out of jail,' and he told Dick that he could not do that. That Jonas Lewis and Major Wesley were not there when the killing occurred.

The defense of the other two defendants was an alibi. Jonas Lewis, as a witness in his own behalf, testified: That he lived about four miles west of Eufaula at the home of Lumber Billey, his father-in-law. Was in Eufaula that day, and, with Samson Lewis, followed Joe Dick and John Asbury to get some of their whisky. That Joe Dick told them to go back, and they returned. That Samson Lewis and Henry McIntosh had a difficulty and in assisting Samson he struck McIntosh. That it was then about 5 o'clock and he started to walk home. That Major Wesley, following, caught up with him, and they both went on together. That about 7 o'clock they stopped at Lewis Mitchell's house to get some water. That they then went to Lumber Billey's, and he stopped, and Major Wesley went on. He denied any participation in the murder. That while they were in jail, Joe Dick said to him:

"It seems that they are going to fix that murder on us; but, if you and the rest of us will claim that Major Wesley did the killing, you and the rest of us will get out."

Major Wesley, as a witness in his own behalf, testified that he lived about five miles west of Eufaula; that he was present when the difficulty took place between Henry McIntosh and the two Lewis boys; that it was then about sundown, and shortly afterwards he started for home; that he overtook Jonas Lewis on the road, and they went on together; that they stopped at

Lewis Mitchell's house to get a drink of water, and when they reached Lumber Billey's place Jonas Lewis went in and he went on to his house; that his wife and Henry Deer were there; that he was not present and had nothing to do with the murder of John Asbury.

Henry Deer, Lewis Mitchell, Lumber Billey, and Silva Wesley, wife of Major Wesley, testified in support of the alibi.

*Turner & Turner* and *Robertson & Kean,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, P. J. (after stating the facts as above). The main contention in this case is that the trial court erred in admitting incompetent evidence. Tom Plotner, a witness for the state, testified that he worked at the power house, situated near the Missouri, Kansas & Texas Railway, about a quarter of a mile north from the point where the body of John Asbury was found; that on that day about sundown he stepped to the door of the power house, and saw Major Wesley and John Asbury, both holding a post that held a guy wire of the power house smokestack; that they were reeling around and holding to the post, and both seemed to be drunk and mad; that he could not understand their conversation, as it was in the Creek language; that Wesley motioned to Asbury up and down the railroad track and then put his hand up in Asbury's face; that they walked up to him, and Asbury commenced talking to him. Over the objections of counsel for the defendants, he was permitted to testify to the following conversation with John Asbury:

"Q. State what John Asbury said to you? A. Well, he walked up to me there by the door, and said, 'Did you hear what that damn son of b——h was saying to me?' I said, 'No, I didn't understand his language.' 'Well, he said he was going to kill me and put me on the railroad track to-night.' I says to him, 'Johnnie, you had better go home.' And he says: 'I am a pretty good man myself, by God! I have been in the pen.' And he turned and went in the same direction following Wesley. The Court: How long after the other left before he said that? A.

He commenced talking to me before the other fellow was out of hearing. Q. How far away had Major Wesley gone when he first—what was your statement about that? A. Major Wesley turned that way, going past the building, and I was standing in the door, and he walked up with Major and commenced talking, and said what Major had said, and Major was passing by. The Court: Objections overruled. Exceptions saved by the defendants."

This conversation was objected to on three grounds: First. That it was a declaration of the deceased not made in point of time and sufficiently connected with the killing as to form a part of the *res gestae*. Second. That it was not made in the presence and hearing of the defendant. Third. Because the witness Plotner did not understand the language used by Wesley and Asbury, and any attempt to repeat in English any part of such conversation, even in the hearing of the defendant, was incompetent, because the defendant did not understand the English language.

We think that the objections made were not well taken. The previous relations of the parties, their feeling and actions toward each other, and the circumstances immediately surrounding the homicide are admissible, and acts and declarations of the deceased before the homicide which are connected with any act leading up to the homicide so as to form a part of the same transaction are admissible as a part of the *res gestae*. The testimony shows that the defendant Wesley and the deceased at the time were going towards the place where shortly afterwards the murder was committed, and it is substantially shown that what the deceased said to Plotner was in the hearing of the defendant Wesley. There was no offer to prove that Wesley did not understand the English language, although, later on, the record discloses that when Wesley testified he did so through an interpreter, but that fact of itself would not constitute proof that he did not understand the English language. The court, in its discretion and for the purpose of expediting business, may have, on the defendant's request, permitted this method of examination, where the language usually used by the witness is different from that employed in the court. The presumption must be,

unless there is an affirmative showing to the contrary, that a person understands the prevailing language of the country.

It is also contended in behalf of plaintiffs in error that the trial court erred in permitting the county attorney, in the course of the cross-examination of the defendant Major Wesley, to propound to him the following question:

"Q. I will ask you if you wasn't present at the time that John Asbury was killed, and if you didn't assist in the killing, and when you struck him the last lick, you made this remark, 'You accused me of killing another man and putting him on the track, and now they can accuse me of killing you and putting you on the track'?"

It appears from the record that no objection was made to this question, and no ruling of the trial court on the question of its propriety was requested, and no exception taken respecting it. Upon the record there is nothing presented to this court for determination. The witness Joe Dick testified as to statements made by the defendant Wesley at the time he says Wesley was striking the deceased with the club. Such declarations on the part of the defendant Wesley were clearly a part of the *res gestae*, and admissible as such.

It also appears from the record that the defendant Wesley as a witness was asked the following question by his counsel, Mr. Robertson:

"Q. Major, you were charged here two years ago with killing an Indian and putting him on the track and tried before the jury and acquitted, were you not? A. Yes."

Under these circumstances, it cannot be assumed that the defendant Wesley suffered any harm on his cross-examination of which he can now complain.

Finally, counsel for plaintiff in error complain of certain alleged prejudicial remarks on the part of the county attorney. The fourth ground of the motion for a new trial is as follows:

"That error occurred in said trial of said cause, because of misconduct of the county attorney in his closing argument to the jury in referring to the fact that Major Wesley, one of the defendants herein, was in the habit of killing people and putting them on the railroad track, and that the said Major Wesley

had been so charged in another and different case, with the commission of the same sort of crime as was charged in this case. A *verbatim* statement of the county attorney's remarks is not set out herein, for the reason that his argument was not taken by the official stenographer of said court, but that the above and foregoing was the substance of his remarks to the jury, and excepted to by the defendants."

There is no recital in the case-made as to what these remarks were, and the record does not show that any objection was made, or exception taken at the time to any remark made by the county attorney. There is, therefore, nothing before this court to determine.

In *Saunders v. State,* 4 Okla. Cr. 264, 111 Pac. 965, Ann. Cas. 1912B, 766, it is said:

"But the statements of attorneys made in the argument of the case in open court in the presence and hearing of the judge cannot be shown to this court by affidavits either on the part of the state or the defendant. The argument of the cause to the jury is a part of the trial, and statements made therein, to be reviewed, must appear by a proper recital of fact in the case-made so that the certificate of the trial judge will be a certificate to the correctness of the recital. The judge must settle the case-made, and thereby determine what was said, so that his certificate will attest the truthfulness and correctness of the recital in the case-made. But the trial judge's certificate does not attest the truthfulness of affidavits offered in support of or in opposition to matters alleged in the motion for a new trial."

It is true, as counsel assert, that the case against the defendants depends in a great measure upon the testimony of an accomplice; but his testimony is sufficiently corroborated upon all material points, and we cannot hold as a matter of law that the evidence, if believed, as it must have been, was not sufficient to warrant a jury of fair-minded men in reaching the conclusion evidenced by the verdict.

We have given this case careful consideration, and, while in some instances the state went to the full limit of the rules of evidence, we are not satisfied that any such error intervened as would justify a reversal of the judgment.

The judgment is therefore affirmed.

FURMAN and ARMSTRONG, JJ., concur.